SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,

v.

Terry L. DOWDELL, et
al., Defendants.

No. CIV. A. 301CV00116.

United States District Court,
W.D. Virginia,
Charlottesville Division.

Dec. 7, 2001.

Jean Barrett Hudson, U.S. Attorney's Office, Charlottesville, VA, Celiza P. Braganca, U.S. Securities & Exchange Commission, Chicago, IL, for Plaintiff.

Michael L. Waldman, Jay Majors, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC, for Terry L. Dowdell.

Michael Eugene Derdeyn, Robert Craig Wood, McGuire, Woods, Battle & Boothe, Lori S. Thomas, McGuire Woods LLP, Charlottesville, VA, for Birgit Mechlenberg and Kenneth G. Mason.

Birgit Mechlenberg, Lenox, MA, pro se.

Kenneth G. Mason, Chicago, IL, pro se.

Rhonda Quagliana, St. John, Bowling & Lawrence, Charlottesville, VA, Bruce A. Baird, Jarrett A. Williams, Covington & Burling, Washington, DC, for Mary Dowdell, Rebecca Dowdell, Adam Dowdell, Wendy Dowdell, Nona Pierce, Cynthia Pierce, Stephen Pierce, and Willwood Design Corporation.

Juliet D. Hiznay, Michael D. Wolk, Bryan B. House, Foley & Lardner, Washington, DC, for Marcia Dowdell and David Dowdell.

## MEMORANDUM & OPINION

MICHAEL, Senior District Judge.

On November 19, 2001, the court granted the motion of the plaintiff Securities and Exchange Commission (SEC) for an *ex parte* temporary restraining order which included provisions enjoining the defendants from committing federal securities violations, freezing the assets of certain defendants and setting various discovery deadlines.

The court conducted a hearing on December 6, 2001 where it took up the parties' pending motions including an emergency motion on the part of defendant Terry L. Dowdell to continue the preliminary injunction hearing and modify the TRO; the SEC's motion for a preliminary injunction; a *pro se* motion by defendant Kenneth G. Mason that only affidavits be allowed, and no live testimony, at the preliminary injunction hearing; and motions filed by defendants Terry L. Dowdell, Kenneth G. Mason and Birgit Mechlenburg to modify the TRO and permit payment of living expenses and attorney's fees. Counsel for some of the relief defendants also moved this court to amend the TRO with respect to the discovery deadlines applicable to this group of defendants.

Having reviewed the motions and oppositions thereto, having heard oral argument by counsel, and for the reasons hereinafter set forth, the defendant Dowdell's [1] motion to continue the hearing shall be GRANTED IN PART; the plaintiff's motion for a preliminary injunction shall be DENIED without prejudice to refile for the rescheduled preliminary injunction hearing; defendant Mason's *pro se* motion to use only affidavits at the December 6th hearing shall be DENIED AS MOOT; and the defendants' motions regarding the release of assets for living expenses and attorney's fees shall be GRANTED under the terms to be set forth in an order of this court. The court shall issue an amended TRO which reflects the above rulings as well as the changes requested by counsel for relief defendants.

---

1. The court notes that when it refers to "defendant Dowdell," it means Terry L. Dowdell and not any of the relief defendants who share Terry L. Dowdell's surname.

## I.

In brief, this is an SEC enforcement action. The defendants in this case are alleged to have orchestrated and run a Ponzi or pyramid scheme. According to the uncontradicted evidence presented by the SEC at the *ex parte* TRO hearing, under the scheme, identified as the "Vavasseur program," clients were promised high profits for their investments. The SEC produced a paper trail to demonstrate their contention that the defendants would then simply use the money put in by the newest investors to pay earlier investors their promised "profits," and would misappropriate the rest. The SEC estimated that an amount of $29,000,000.00 was involved. The SEC investigation also indicated that the defendants continued to operate the scheme in the United States.

In granting the *ex parte* TRO on November 19, 2001, the court found that the SEC had met its burden of providing a proper showing, as required by 15 U.S.C. § 78u(d)(1) and 15 U.S.C. § 77t(b), that such relief was warranted. Namely, the SEC put forth what the court deemed sufficiently credible information presenting a case that a violation had occurred of the statutes involved, including, *inter alia*, 15 U.S.C. § 77q(a), 15 U.S.C. § 78j(b), and 15 U.S.C. § 78o, and that such violations were occurring or would continue to occur. The TRO provided, among other things, for the freezing of assets of three individuals, Terry L. Dowdell, Birgit Mechlenburg and Kenneth G. Mason and two business entities, Dowdell Dutcher & Asosociates, Inc., and Vavasseur Corporation.

The court initially scheduled the preliminary injunction hearing for November 27, 2001. Subsequently, upon joint motion of the parties, the court continued the hearing until December 6, 2001 and extended the provisions of the TRO, with some modifications to discovery deadlines, until December 7, 2001.

None of the defendants were actually present at the December 6 hearing. Terry Dowdell was absent for medical reasons discussed more fully below, although his counsel did attend. Kenneth G. Mason and Birgit Mechlenburg sent *pro se* filings to this court indicating that they would not be in attendance in person or by counsel. Meanwhile, counsel for one law firm representing seven of the relief defendants were in attendance to make an initial appearance on behalf of their clients.

## II.

The court will first address defendant Dowdell's motion to continue the preliminary injunction hearing and the plaintiff's motion for a preliminary injunction which the court also construes as plaintiff's opposition to Dowdell's motion to continue.

Defense counsel represents that he has met only once with Terry Dowdell since the entry of the TRO. Mr. Dowdell was hospitalized on November 27, 2001, and upon his release six days later, was advised by his treating physician to avoid stress "including active consultations with his counsel regarding the lawsuit, for a minimum of two weeks." (Decl. of Dr. Gerald L. Brown ¶ 8). Defense counsel points out that he cannot adequately prepare for the case without the assistance of his client who is apparently unavailable at least for the next two weeks or so. Therefore, defense counsel, noting that his client consents to an extension of the TRO, moves to continue the preliminary injunction hearing until February 6, 2002 and extend discovery deadlines until January 7, 2002.

In response, the plaintiff describes defense representations as incredible and indicates that it had not received even minimal cooperation from defendant Dowdell since the entry of the TRO. Thus, the SEC believes that a preliminary injunction

should still issue as it believes overwhelming evidence against the defendants exist. The SEC did state that it would accept a two-week stay in discovery but still wanted to receive a full statement from the defendant's physician providing details of the defendant's medical condition as well as a basic accounting of bank accounts to which the defendant was signatory or held a beneficial interest.

While the court finds that counsel for defendant Dowdell presented a very thin case for his client's absence and for a continuance, the court nevertheless shall accept the representations of defense counsel, as an officer of the court, that Terry Dowdell's medical condition has prevented him from adequately preparing for this case.

In addition to considering the parties' arguments, the court must look to the law of this circuit. The Fourth Circuit makes clear that defendants should be given a fair opportunity to oppose a preliminary injunction motion. *See Ciena Corp. v. Jarrard*, 203 F.3d 312, 319 (4th Cir. 2000) and *Consolidation Coal Co. v. Disabled Miners of Southern W. Va.*, 442 F.2d 1261, 1269–70 (4th Cir.1971) ("The conclusion is inescapable that since a district court is required by the rule to make findings of fact, the findings must be based on something more than a one-sided presentation of the evidence."). Furthermore, the district court has broad discretion to manage the timing and process for entry of all interlocutory injunctions—both TROs and preliminary injunctions. *See Ciena Corp.*, 203 F.3d at 319.

The court also notes that the Dowdell defendants have consented to the extension of the TRO, and Fed.R.Civ.P. 65(b) allows for extensions where the party against whom the order is directed consents. The court acknowledges that two other defendants subject to the asset freeze, Birgit Mechlenburg and Kenneth G. Mason, have filed *pro se* briefs and affidavits in opposition to the continuance of the TRO. Mason also filed a motion indicating that neither he nor Mechlenburg would be present at the hearing as the asset freeze prevented them from travel and hiring counsel. He moved the court to conduct the hearing on affidavits only. In addition, these two defendants each filed motions for reasonable living expenses and attorney's fees. The court believes that its ruling on these motions for expenses and fees, discussed below, could considerably change the circumstances which prevented these defendants from appearing before the court or hiring counsel. Moreover, the merits of the preliminary injunction, addressed by their briefs, were not taken up by this court at the December 6th hearing, which renders Mason's motion on this moot. For these reasons, the court finds good cause, as required by Fed.R.Civ.P. 65(b), to extend the TRO for all defendants.[2]

Therefore, the court shall grant defendant Dowdell's motion to continue the hearing, but the court does not adopt the dates which Dowdell requests for discovery and the hearing. Instead, the court shall require defense counsel for Dowdell, within the next ten days, to supply information about the bank accounts over which Dowdell possesses signatory authority or in which he has a beneficial interest. Furthermore, the court requires defense coun-

**2.** The plaintiff moved this court at the end of the December 6th hearing to enter a preliminary injunction against the defendant, Vavasseur Corporation, because, as plaintiff asserted, they were properly served notice yet failed to appear or respond. As the court indicated at the hearing, the court will take this up in a future opinion, for the purposes of this opinion, the TRO shall be extended against Vavasseur Corporation as well as the other defendants.

sel, within the next ten days, to submit a detailed medical analysis of Dowdell's condition. In addition, the court gives the SEC the right, if they choose to seek it, to obtain an independent medical evaluation of Dowdell. The TRO shall be extended until a date to be determined after the submission of these filings by defense counsel. The court will at that time reschedule the preliminary injunction hearing.

### III.

The court shall next address the motions filed by Dowdell, Mechlenburg and Mason for a modification of the TRO to allow for living expenses and attorney's fees. These defendants all claim financial hardship as the reason for their requests. The defendants argue that the effect of the *ex parte* TRO was to halt immediately access to funds ordinarily used by these defendants to pay living expenses. As the defendants contend that they have no other significant income available (Mr. Dowdell does indicate his wife receives $400 per month), they seek a modification of the TRO by the court to allow for them to pay living expenses, attorney's fees, and in the case of Mr. Mason, business expenses.

### A.

Courts clearly have the authority to enter freeze orders in an SEC enforcement action. *See SEC v. International Loan Network, Inc.*, 770 F.Supp. 678, 696 (D.D.C.1991). Such relief facilitates the enforcement of any disgorgement remedy which might result from finding at trial that a violation had occurred. *See SEC v. Coates*, 1994 WL 455558 (S.D.N.Y.1994). If the court has the authority to freeze personal assets temporarily, it logically has the "corollary authority to release frozen personal assets, or lower the amount frozen." *SEC v. Duclaud Gonzalez de Castilla*, 170 F.Supp.2d 427 (S.D.N.Y.2001). Courts are called upon to weigh "the dis-

advantages and possible deleterious effect of a freeze [...] against the considerations indicating the need for such relief." *See SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1105(2d Cir.1972).

Courts which have addressed requests for living expenses look for evidence of the defendant's overall assets or income. *See SEC v. Duclaud Gonzalez de Castilla*, 170 F.Supp.2d 427 (S.D.N.Y.2001). Where the courts have denied such requests, the defendants were found to have other sources of income or were requesting funds for luxuries, not necessities. *See id.* (finding that the defendant had voluntarily waived a $15,000 per month salary and was seeking money for a nanny, housekeeper, handyman and nurse); *see also SEC v. Coates*, 1994 WL 455558 (S.D.N.Y.1994)(finding defendant failed to tell the court that the receiver was already paying monthly salaries to him and his family totaling almost $12,000 and that budget included lawn and pool service).

In this case, the defendants have represented that they have no other sources of income, except for Terry Dowdell who notes that his wife earns $100 per week. Dowdell asks for a lump sum of $4000 per month to meet living expenses. Mason and Mechlenburg ask for $1200 per month and $2000 per month respectively, but also provide detailed lists of additional possible payees. The lists do appear to include those types of bills which would be considered ordinary such as phone companies, the electric company, life insurance companies, and doctors. However, the court . notes that Mechlenburg also asked for permission to pay a credit card company which, if permitted, would result in no restriction on the amount or the type of charge she could make.

As there is no evidence before the court to indicate the defendants have alternate sources of income or are seeking funds for

luxuries, and because the SEC is not opposing the release of some funds for personal expenses, the defendants' motions may be granted.

Accordingly, Terry Dowdell's motion to unfreeze assets in the amount of $4,000.00 per month for living expenses shall be granted. Defendants Mason and Mechlenburg's motions are more complicated. The court is not going to be their bookkeeper with regard to the raft of creditors they listed to this court. As such, the court shall approve an amount for the monthly expenses of these defendants, as it did for Mr. Dowdell. Based on Mason's submission, the court shall approve a monthly sum of $1,700.00. The court informs Mason that if he wants business expenses as well, he must submit a similar lump sum estimating monthly expenses to this court. Once the court receives this information, it will take up Mason's request for business expenses. In the case of Mechlenburg, the court shall approve a monthly amount of $2,500.00. The court's order on these motions shall remain in effect for December, January and February, at which time, if necessary, the parties must resubmit such requests.

Therefore, the court grants the motions of Dowdell, Mechlenburg and Mason for living expenses under the terms discussed above and without prejudice to such further submissions as the parties feel are appropriate.

### B.

■ On the subject of attorney's fees, the defendant argues that it would be an extreme hardship to deny him the ability to pay for an attorney, and he questions the validity of the SEC's case on the merits. In opposing an open-ended consent to attorney's fees, the plaintiff emphasizes that it has a duty to protect investor funds and suggests that the defendant demonstrate that the assets are not linked to fraud. Alternatively, the plaintiff proposes that the court authorize payment of the same fee given to court-appointed defense counsel in criminal matters.

The case law is anything but consistent on whether defendants in this type of civil enforcement action may be permitted to pay attorney's fees with a portion of their frozen assets. On one end of the spectrum is the Seventh Circuit which has not minced words in expressing its opposition to such requests:

> Just as a bank robber cannot use the loot to wage the best defense money can by, (internal citations omitted), so a swindler in securities markets cannot use the victims' assets to hire counsel who will help him retain the gleanings of crime. (internal citations omitted) *SEC v. Quinn,* 997 F.2d 287, 289 (7th Cir. 1993).

A similar philosophy was expressed in the *Coates* case in the Southern District of New York where the court found that "[a] defendant is not entitled to foot his legal bill with funds that are tainted by his fraud." 1994 WL 455558 at *3. The *Coates* court ordered a hearing to determine whether any of the assets were not tainted by fraud. However, at least one court has found that such a showing by the defendant would be irrelevant where the potential disgorgement order would vastly exceed the assets that had been frozen. *See SEC v. Current Financial Services,* 62 F.Supp.2d 66, 68 (D.D.C.1999)(finding that the defendant's profit from fraud exceeded $156,000.00 and his frozen funds only amounted to $44,000.00 and denying a motion to unfreeze assets for attorney's fees).

In contrast, other courts have approved attorney's fees. Notably, the Seventh Circuit indicates, without comment, in *Quinn* that the district court had "indicated willingness to release small amounts so that [the defendant] could defend this suit, and

on occasion the court did so." 997 F.2d at 289. Attorney's fees were also granted in *SEC v. Duclaud Gonzalez de Castilla*, 170 F.Supp.2d 427 (S.D.N.Y.2001) where the court explained that the defendants had presented a possible challenge to the SEC's evidence and that substantial legal work had already been performed in arguing summary judgment motions. *See also SEC v. International Loan Network, Inc.*, 770 F.Supp. 678, 680 (D.D.C.1991) (mentioning that it had granted a modification of the asset freeze to permit defendants to retain counsel on their behalf).

This court's central concern is the fairness of the proceedings. The court does not believe that it could achieve a fair result at the preliminary injunction hearing were it to deny defendants the ability to retain counsel. This is a complex legal matter, and lawyers are essential to the presentation of issues related to it. Therefore, the court is ordering the respective attorneys to file with the court, within the next ten days, reasonable estimates of the fees necessary to take them through the hearing on the preliminary injunction. If the estimates are reasonable, the court will approve them.

### IV.

Finally, counsel for certain of the relief defendants moved at the December 6, 2001 hearing for an amendment of the section in the existing TRO which addresses relevant discovery deadlines. Counsel seeks to expunge that portion of the TRO which required the relief defendants to have already provided certain discovery information. The plaintiff does not oppose such an amendment. Counsel represents that the relief defendants would comply with whatever other expedited discovery deadlines set by the court.

For good cause shown, the court shall so amend the TRO. The court will add the relief defendants to the first sentence of Section XI of the TRO.

As the deadlines set in the TRO have expired not only as to the relief defendants but as to the defendants as well, the court shall also set new deadlines such that where defendants were under deadline to produce information, they must now do so within ten days of the date on which the amended TRO is entered. The court shall indicate in the TRO those deadlines from which defendant Dowdell is excluded as he is obligated to submit materials under separate order of the court.

### V.

For the foregoing reasons, the court hereby grants the defendant Dowdell's motion to continue to the extent that the court agrees to continue the preliminary injunction hearing, although the date is still to be set. The court denies the plaintiff's motion for preliminary injunction, without prejudice to refile for the rescheduled preliminary injunction hearing. The motion of defendant Mason for the court to proceed on affidavits only at the December 6th hearing is denied as moot. The defendants' motions for living expenses and attorney's fees are granted under the terms to be set out in a corresponding order. Finally, the court extends the existing TRO, with corresponding amendments to its various deadlines, to a date to be determined upon submission by defense counsel of the requested accounting and medical reports.